Filed 9/6/22  In re S.B. CA2/3

See dissenting opinion

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | B316419 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.B.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP01713E |

APPEAL from an order of the Superior Court of Los Angeles County.  Martha A. Matthews, Judge.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

Mother J.B. appeals from the juvenile court's order terminating her parental rights to her child, S.B. She contends the juvenile court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their duties of initial inquiry under state law (Welf. & Inst. Code, § 224 et seq.) implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).[1] We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother gave birth to S.B. on July 31, 2020. About a week later, the Department received a referral expressing concern that mother was not compliant with an open dependency case related to mother and father's other children, N.B. and K.B. As to those children, the juvenile court sustained a section 300 petition in June 2018 after mother tested positive for methamphetamine at K.B.'s birth. The court removed the children from mother's custody and released them to father. The court terminated jurisdiction over the children and granted father sole physical custody in September 2019.

The Department detained N.B. and K.B. in April 2020 after father purposely cut his arm with a knife. In June 2020, the court removed the children from their parents' custody and placed them with paternal grandparents. The record does not disclose whether mother was present at the detention hearing. The social worker assigned to N.B. and K.B.'s case, however,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. Because ICWA uses the term "Indian," we do the same for consistency. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

said she was not able to locate mother until sometime around August 2020.

As to S.B., the Department filed a section 300 petition alleging father has a history of violent and assaultive behavior, substance abuse, and mental and emotional problems.  It further alleged mother has a history of substance abuse.  The Department attached to the petition an ICWA Inquiry form indicating mother denied the child has Indian ancestry.

During the Department's investigation of S.B.'s case, mother disclosed that she had been living with maternal grandmother while pregnant with S.B., but she had recently moved to Los Angeles to enroll in a drug treatment program.  According to mother, a court removed her from maternal grandmother's custody when she was in sixth grade and placed her with maternal grandfather.  Mother said that, although she recently had been living with maternal grandmother, she had a closer relationship with maternal grandfather.

The court conducted a detention hearing for S.B. on August 21, 2020.  The same day, mother filed a Judicial Council form ICWA-020, Parental Notification of Indian Status (ICWA-020 form) indicating she has no reason to know S.B. is an Indian child.  The form also states mother had not previously filed an ICWA-020 form with the court.  Mother did not sign the form; instead, someone (presumably her counsel) wrote on the signature block, "Authorized to sign by parent."

Mother appeared at the detention hearing by phone.  The court started the hearing by telling mother that it would review some paperwork with her.  The court then noted, "Mother has filled out a form indicating that she does not have any American Indian ancestry.  Father has previously filled out a similar form

3

in the siblings' case, so at this time, based on information from both mother and father, the court will find that the Indian Child Welfare Act does not apply." The court detained S.B. and released her to maternal uncle.

The court's minute order from the detention hearing states: "The Court does not have reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney, and the Court aware of any new information relating to possible ICWA status. ICWA-020, the Parental Notification of Indian Status is signed and filed. [¶] ICWA 020 Form is filed by [mother] this date."

The Department addressed ICWA in an October 2020 jurisdiction and disposition report. It represented that, "[p]er [the] Detention Report," mother denied Indian ancestry and signed an Indian Ancestry Questionnaire. The Department also represented that, in connection with the siblings' case, paternal grandmother denied that father has Indian ancestry and did not believe that mother has Indian ancestry. There is no indication that the Department asked mother's relatives about ICWA, despite being in contact with maternal grandmother and maternal uncle.

Mother pleaded no contest to an amended petition, which the court sustained at an October 7, 2020 jurisdiction hearing. At the subsequent disposition hearing, the court declared S.B. a dependent, removed her from her parents' custody, and ordered family reunification services. The Department placed the child with a nonrelative.

On May 7, 2021, the court terminated reunification services after finding mother and father had not made substantial

4

progress in their case plans. Mother did not appear at the subsequent permanency planning hearing. The court again found no reason to believe ICWA applies, explaining that "[a]s to the older two children in which [father] appeared and has counsel, [father] stated that he does not have American Indian ancestry. . . . I can find based on the information available in the related older children's cases and based on information from mother that there is no reason to believe that the Indian Child Welfare Act applies as to the child [S.B.]." The court then terminated mother's and father's parental rights and ordered a permanent plan of adoption.

Mother timely appealed.

### DISCUSSION

Mother urges us to reverse the order terminating her parental rights because the court and the Department failed to comply with their initial inquiry duties under state law implementing ICWA. The Department asserts the court complied with its duties and, in any event, the Department's noncompliance was harmless.

### 1. *Applicable law and standard of review*

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8; see 25 U.S.C. § 1902.) Both ICWA and state law define an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership

5

in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M., supra,* 70 Cal.App.5th at p. 741.)

As of January 1, 2019, state law implementing ICWA requires juvenile courts to ask all participants in a dependency case whether they know or have reason to know the child is an Indian child and to instruct the parties to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); see Cal. Rules of Court, rule 5.481(a)(2).) The California Rules of Court also require juvenile courts to order the parents to complete an ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Further, whenever the Department takes a child into its temporary custody, California law requires it to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].)

If the initial inquiry gives the juvenile court or the Department a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible

6

Indian status of the child" is triggered. (§ 224.2, subd. (e); *Benjamin M., supra*, 70 Cal.App.5th at p. 742.) And, once there is a "reason to know" an Indian child is involved, formal notice under ICWA must be given to the children's "parents or legal guardian, Indian custodian, if any, and the child's tribe." (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1); 25 U.S.C. § 1912(a).)

We review the juvenile court's ICWA findings for substantial evidence. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

## 2. *The juvenile court's failure to comply with its inquiry duty was harmless*

Mother urges us to reverse the order terminating her parental rights because the juvenile court failed to comply with its inquiry obligations under section 224.2, subdivision (c). Specifically, she contends the court failed to ask her whether she "knows or has reason to know that the child is an Indian child," and failed to instruct her to "inform the court if [she] subsequently receive[s] information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) The Department suggests the court was not required to question or admonish mother in S.B.'s case because it presumably had already done so in connection with the siblings' case, and although not reflected in the reporter's transcript, the minute order from the detention hearing admonished mother to keep it updated with information related to ICWA.

We need not decide whether the trial court erred because even if it did so, any error was harmless. (See Cal. Const., art. VI, § 13 [error must result in "miscarriage of justice" to be set aside].) The record indicates Mother repeatedly denied

7

having reason to know S.B. is an Indian child, first to a DCFS social worker and later on the ICWA-020 form she filed with the court.[2] Although the court did not directly question mother about S.B.'s Indian status at the detention hearing, it did discuss the issue with her. At the start of the hearing, the court told mother it needed to review some paperwork with her. The court then referred to mother's ICWA-020 form and noted it indicated "that [mother] does not have any American Indian ancestry." Neither mother nor her counsel corrected the court or in any way suggested her form was incomplete or inaccurate. Given mother's silence and prior denials, it is not reasonably probable that, had the court questioned her directly, she would have indicated that she knew or had reason to know S.B. is an Indian child. Under these circumstances, the court's failure to ask mother about S.B.'s Indian status was harmless.

The same is true of the court's failure to admonish mother to inform the court if she subsequently received information that provides reason to know the child is an Indian child. Mother's ICWA-020 form instructed her—among other things—to notify all the attorneys on the case and file another form if she received new relevant information.[3] Mother does not contend that she

---

[2]     Although mother did not personally sign the form, she does not deny that she authorized someone (presumably her counsel) to sign the form on her behalf. Nor does she contend that any information in the form is inaccurate.

[3]     The form instructs that "[i]f you get new information that would change your answers, you must let your attorney, all the attorneys on the case, and the social worker or probation officer, or the court investigator know immediately and an updated form must be filed with the court."

was unaware of this instruction.  Nor does she contend that she received new information that she would have disclosed to the court, but for its failure to admonish her under section 224.2, subdivision (c).  Accordingly, any error was harmless and does not warrant reversal.

3.     ***The Department's failure to comply with its inquiry duty was harmless***

Mother alternatively contends reversal is warranted because the Department failed to ask the initial reporter, maternal grandmother, and maternal uncle whether S.B. is, or may be, an Indian child, as required under section 224.2, subdivision (b).  The Department implicitly concedes the errors, but argues they were harmless.  We agree with the Department that any error was harmless.  (See Cal. Const., art. VI, § 13 [error must result in "miscarriage of justice" to be set aside].)

The court in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*) recently summarized the " 'continuum' " of rules developed by California courts for "assessing whether a defective initial inquiry is harmless."  (*Id*. at p. 777.)  At one end of the continuum, the Department's defective initial inquiry requires reversal in essentially every case, even if it is unlikely further inquiry might lead to a different ICWA finding on remand.  (*Ibid*.)  At the other end, the defect is treated as harmless unless the parent makes a proffer on appeal as to why further inquiry would lead to a different ICWA finding.  (*Ibid*.)  Somewhere in between the two extremes is the rule stated in *Benjamin M., supra*, 70 Cal.App.5th at p. 744, that a defective initial inquiry requires reversal if "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" existed.  (See *Dezi C.,* at p. 778.)

9

Unsatisfied with all of these rules, the court in *Dezi C.* announced a fourth standard: the failure to conduct a proper initial ICWA inquiry is harmless "unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C., supra*, 79 Cal.App.5th at pp. 778–779.) The *Dezi C.* court explained that "a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage *at all* [citation]; or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed [citation]." (*Id.* at p. 779.)

We reject the extreme ends of the continuum. As the *M.M.* court recently explained while rejecting the automatic reversal rule, there are "serious costs if courts delay finalizing permanency for a child in every case where extended family was not questioned, on the remote chance those relatives might have information which is inconsistent with the parents' disclaimer of Indian ancestry." (*In re M.M.* (2022) 81 Cal.App.5th 61, 71 (*M.M.*).) We also agree with the *Dezi C.* court that a rule requiring the parent to make a proffer on appeal "embraces finality at the expense of the tribe's interest in ascertaining accurate determinations of the Indian status of dependent children," and "does too little to incentivize agencies to conduct proper inquiries . . . ." (*Dezi C., supra*, 79 Cal.App.5th at p. 785; see *Benjamin M., supra*, 70 Cal.App.5th at pp. 743–744

10

[requiring a parent to make a proffer on appeal is inconsistent with the ICWA statutory scheme].) We need not decide between the remaining standards because, under either one, the Department's failures in this case were harmless.

As to the Department's failure to question the initial reporter, there is little doubt that further inquiry would have been futile. As mother concedes, given the nature of the report— that mother was not in compliance with an open case concerning her other children—it is near certain that the reporter was a Department social worker. If so, we may presume the reporter understood the importance of ICWA and would have voluntarily disclosed relevant information in her possession if she had any. Accordingly, it is neither "reasonably probable" that the Department's inquiry error "affected the correctness (that is, the outcome) of the juvenile court's ICWA finding" (*Dezi C.*, *supra,* 79 Cal.App.5th at p. 781), nor is it likely further inquiry of the initial reporter would have produced information that "would likely have shed meaningful light" on S.B.'s Indian status (*Benjamin M., supra*, 70 Cal.App.5th at p. 744).

The same is true of the Department's failure to question maternal grandmother and maternal uncle about S.B.'s Indian status. As noted above, mother repeatedly and unequivocally denied having any reason to know S.B. is an Indian child. Nothing in the record casts doubt on the veracity of mother's representations or suggests maternal relatives could provide the Department with additional meaningful information about S.B.'s Indian status. Mother was raised by, and remained in contact with, her biological parents, from whom she presumably learned about her ancestry and any tribal membership; mother offers no reason why maternal grandmother would have withheld

11

that information from her. Nor does she suggest any reason why her sibling (maternal uncle) might possess information relevant to his niece's Indian status that the child's own mother does not. Under these circumstances, the Department's failure to inquire of maternal grandmother and maternal uncle was harmless under both the *Dezi C.* and *Benjamin M.* standards. (See *M.M., supra,* 81 Cal.App.5th at p. 72 [holding the Department's failure to question extended family members about the child's Indian status was harmless under both standards where the parents unequivocally denied knowledge of any Indian ancestry].)

Mother's reliance on *In re H.V.* (2022) 75 Cal.App.5th 433, *In re Y.W.* (2021) 70 Cal.App.5th 542, and *Benjamin M., supra,* 70 Cal.App.5th 735, is misplaced. The court in *H.V.* essentially applied an automatic reversal rule, which we reject for the reasons discussed above. (See *H.V.,* at p. 438.) The other cases —*Y.W.* and *Benjamin M.*—are distinguishable on their facts. In *Y.W.,* the mother had been adopted as a toddler, and the Department never attempted to contact her biological parents to confirm whether her denial of Indian ancestry was accurate. (*Y.W.,* at pp. 548–550.) In *Benjamin M.,* the father never appeared in court or denied having reason to know his child is an Indian child. (*Benjamin M.,* at p. 740.) Here, in contrast, mother was raised by her biological parents, appeared in court, and repeatedly denied having any reason to know S.B. is an Indian child.

It bears repeating that ICWA's definition of " 'Indian child' " is extremely narrow: an unmarried person under age eighteen who either (a) is "a member of an Indian tribe" or (b) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see

12

also § 224.1, subds. (a), (b).) Tribal membership, moreover, typically requires an affirmative act by the enrollee or the enrollee's parents. (See U.S. Dept. of the Interior, Bureau of Indian Affairs, Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38783 (June 14, 2016); U.S. Dept. of the Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) p. 10.) Given these requirements, a parent will generally be in the best position to know whether a minor is an Indian child. We have no reason to doubt that is true in this case.

## DISPOSITION

We affirm the juvenile court's order terminating mother's parental rights.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

I concur:

EDMON, P. J.

13

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025, I would conditionally affirm the order and remand for further proceedings.


LAVIN, J.